## Sims *v.* Chattanooga.

1. Dedication. *Public Streets.* It is a dedication of land to the use of the public for streets and avenues, when the land is laid off into lots by Commissioners appointed for the purpose, and the lots sold not only according to the plan on paper, but with the corners of the lots and line of the streets and avenues designated by large wooden stubs driven into the ground, with the number of the lots cut thereon, which stubs were in place on the day of sale and for years afterwards, and

Sims *v.* Chattanooga.

the purchasers went into possession with full knowledge, and continued to recognize the public easement; and a municipal corporation, created shortly after the sale so as to include the land "with such lots, streets, lanes and alleys," takes the land covered by the streets in trust for the public.

2. SAME. *Same. Statute of Limitations.* The statute of limitations will not run against the right of a municipal corporation to remove obstructions from its public streets.

3. SAME. *Same. Same. Estoppel.* The continuous enclosure of a strip of a public street by the owner of two lots for eight or ten years with a recognition of the public easement, and a subsequent occupation by persons under him for twelve or fifteen years, including the period from the 6th of May, 1861, to the 1st of January, 1867, when the statute of limitations were suspended, is not sufficient to work an equitable estoppel on the city by laches to remove the obstruction, it appearing that the street was little used, and never worked on until within seven or eight years before action taken.

---

### FROM HAMILTON.

---

Appeal from the Chancery Court at Chattanooga. W. M. BRADFORn, Ch.

CLIFT & CLIFT and VAN DYKE, COOKE & VAN DYKE for complainants.

H. B. CASE and G. A. WOOD for defendants.

COOPER, J., delivered the opinion of the court.

The defendant having notified the complainant to remove certain alleged obstructions in a street of the city, known as Georgia Avenue, occasioned by the complainant's fences and buildings, otherwise the defendant would proceed to remove them, the bill was filed on the 13th of February, 1875, to enjoin such action on the part of the city. The questions involved are, whether the strip of land in controversy was ever ded-

icated to the public so as to constitute a part of the street, and, if so, whether the city has lost its right to the easement by the long possession of the complainant and those under whom he claims.

Under appointment of the occupants, who had a preference of entry, certain commissioners obtained a grant from the State to the north-east quarter of section 29, second fractional township, fourth range west of the basis line of the Ocoee District, and had the lands laid off into lots, and made a general sale of these lots about the 20th of April, 1839. On the eastern line of the land, the commissioners laid off a street fifty feet wide, designated Georgia Avenue, and laid off two lots, among others, bounding on said street, numbered 46 and 48. These lots were sold by the commissionees to Thomas Grigsby, who afterwards sold and conveyed to Thomas McCallie, both of whom were present at the sale. In January, 1859, McCallie sold lot 46 to Daniel Kaylor. Shortly afterwards, McCallie having died, his son sold lot 48 to Jeff. Gold, who resold in 1862 to Kaylor. Kaylor sold both lots to the complainant in December, 1872. All of these conveyances describe the lots simply as Nos. 46 and 48 in the plan of Chattanooga, giving neither distances nor boundaries. On the 20th of December, 1839, the Legislature passed an act incorporating the town of Chattanooga, so as to include within its limits the whole of the quarter section laid off into lots as aforesaid, with "such lots, streets, lanes and alleys as have been or may hereafter be laid off by commissioners appointed by the proprietors of said land for that pur-

pose." Act of 1839, ch. 32, sec. 1. By the survey of the Commissioners, the corners of the lots and the west line of Georgia Avenue were designated by wooden stubs, driven into the ground, with the numbers of the lots cut into them. These stubs were in place at the sale, and remained for some years afterwards. About 1851, McCallie built a house on one of the lots fronting on a cross street, no part of the house extending to the west line of Georgia Avenue. He erected a fence around the lot, and the weight of testimony is that the lot continued, from that time to the commencement of this litigation, to be enclosed, the repairs or renewals of the fencing being on the same line. The son of McCallie is examined as a witness, and proves that he was present when the fence was first built, and that it was, under the instructions of his father, put out into the avenue, his father saying, " until such time as it should be needed by the City of Chattanooga." Most of the property in the vicinity was then in the woods, and unimproved, and for many years afterwards the avenue was only used as a country road. It has not been worked upon by the authorities of the city until within seven or eight years. It was originally expected that the owners of the land on the east of the avenue would give fifty feet, so as to make the avenue of the width of a hundred feet. This was not done by the land owner immediately opposite. Afterwards, some arrangement was effected by which thirty feet were added to the street on that side. On the 22d of May, 1867, the city authorities passed an ordinance " prolonging, widening and establ-

lishing streets," section 10 of which reads as follows: "That Georgia avenue be and is hereby declared opened and established, of the uniform width of eighty feet as now laid out, from the Tennessee river on the north to Market street on the south." As then and now laid off, the western line of the avenue, on each side of lots 46 and 48, is fifty feet from the eastern boundary of the quarter section. There is nothing in this record to call in doubt the eastern line of the avenue as run by the city surveyor, the beginning point being the established and long recognized corner of the quarter section. The fence of the complainant projects into the avenue 13½ feet. · In 1873, complainant erected a house worth $700, which projects six feet seven inches into the avenue. The house fronts on another street. The city surveyor proves that when the foundations were being laid, he notified the workmen that it would encroach both on the street and the avenue, and a change was made which brought the front of the house on a line with the street, but no change was made in the rear of the building where it encroached on the avenue.

The ordinance of 1867 does not aid us in the solution of the questions submitted. For, in the absence of any evidence showing a re-location of the avenue, the words "as now laid out," must legally mean as originally located, with the addition of thirty feet to be given by the owner of the land on the east of the fifty feet. If, indeed, the proof had shown a continuous open street, at the time of the passage of the ordinance, of eighty feet or more, at the point of

controversy, exclusive of the strip of enclosed ground, that would have given a practical meaning to the words different from their otherwise plain legal sense. There is no such proof. The west line of the avenue, then as now, so far as appears, was fifty feet from the eastern margin of the quarter section, that margin being ascertained by survey uncontradicted, and the enclosure of complainant projecting beyond the west line into the avenue.

Under the facts as detailed, there can be no reasonable doubt that the land laid off in the original plan of sale for Georgia Avenue was dedicated to the public as a street; that lots 46 and 48 were sold to a purchaser who had full knowledge of the fact, and that his immediate vendee had equal knowledge, and recognized the right of the city up to his conveyance in 1859. There can be just as little doubt, that after Kaylor became the purchaser, and went into possession of one lot in 1859 and the other in 1862, the recognition of the city's easement, so far as appears, ceased, and that the complainant and his immediate predecessor have had continuous adverse possession for more than seven years. The question is, therefore, squarely raised, whether such possession is a bar to the public right.

No length of time, or abandonment by the public of the use of a highway, will prevent the State from abating an obstruction of the way. *Elkins* v. *State*, 3 Hum., 543. The authorities are not agreed whether municipal corporations, as arms of the government, are entitled to the benefit of the State's exemption from

Sims *v.* Chattanooga.

the bar of the statute, in the matter of their streets and public places, which they hold as trustees for the public. The weight of reason, and perhaps of authority, is in favor of the exemption. 2 Dill. Mun. Corp., sections 529 to 533. We have three cases in our books which favor, if they do not hold, this view. *South Memphis* v. *Howard,* Thomp. Cas., 98; *Memphis* v. *Lenore,* 6 Col., 412; *Memphis* v. *Looney,* 1 Legal Rep., 288. In the last of these cases, Judge Turney approves the summing up of Judge Dillon (Mun. Corp., section 533), in favor of this conclusion. We are content to follow. Excluding the period between the 6th of May, 1861, and the 1st of January, 1867, in analogy to the statute of limitations, the lapse of time has not been such as to raise an equitable estoppel on the city by reason of laches. *Carter* v. *Wolfe,* 1 Heis., 701.

The decree must be reversed and the bill dismissed with costs.