# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
June 21, 2016 Session

## THE CITY OF CHATTANOOGA EX REL. DON LEPARD, QUI TAM, v. ELECTRIC POWER BOARD OF CHATTANOOGA

**Appeal from the Circuit Court for Hamilton County**
**No. 14C809     W. Jeffrey Hollingsworth, Judge**

_____

### No. E2015-01995-COA-R3-CV-FILED-OCTOBER 20, 2016

_____

This is a *qui tam* action brought by the plaintiff on behalf of himself and the City of Chattanooga ("the City") against the Electric Power Board of Chattanooga ("EPB"). The plaintiff filed a complaint pursuant to the Tennessee False Claims Act ("TFCA"), *see* Tenn. Code Ann. §§ 4-18-101 to -108, alleging that EPB had overbilled the City for approximately twenty years by billing for lights not in existence and applying an incorrect energy cost calculation. EPB subsequently filed a motion to dismiss with supporting memorandum and attachments, asserting, *inter alia*, that EPB and the City were the same entity and that the City could not sue itself. Upon the plaintiff's motion, the trial court, pursuant to Tennessee Rule of Civil Procedure 12.03, treated EPB's motion to dismiss as a motion for summary judgment. Following a hearing, the trial court denied EPB's motion upon finding that the relationship between the City and EPB was an issue of disputed material fact. However, upon EPB's request for reconsideration and the filing of additional pleadings and attached documents, the trial court found that the issue of EPB's relationship to the City was a matter of law. Following a second summary judgment hearing, the trial court granted summary judgment in favor of EPB based on a finding that an action brought by the City against EPB would constitute an impermissible case of the City's suing itself. The plaintiff appeals. Although we determine that the trial court erred by denying the plaintiff's motion to amend the complaint, we further determine this error to be harmless because the plaintiff's additional claims would not have been able to survive summary judgment. Discerning no reversible error, we affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and ARNOLD B. GOLDIN, J., joined.

Wilson C. von Kessler, II, Chattanooga, Tennessee, and Jay Michael Barber, Atlanta, Georgia, *pro hac vice*, for the appellant, Don Lepard, *qui tam* for the City of Chattanooga.

Frederick L. Hitchcock and Catherine S. Dorvil, Chattanooga, Tennessee, for the appellee, Electric Power Board of Chattanooga.

**OPINION**

I. Factual and Procedural Background

The *qui tam* plaintiff, Don Lepard ("Plaintiff"),[1] is a Chattanooga entrepreneur who in 2009 founded a limited liability corporation named Global Green Lighting, LLC ("GGL"). In March 2012, the City entered into a contract with GGL to install a municipal LED street lighting grid known as the "Urban Connection Light" system, proceeding initially with a first phase in one section of the City. The City eventually declined to continue funding of any additional phases of the contract with GGL. On July 3, 2014, Plaintiff filed his *qui tam* complaint against EPB, asserting that during completion of the first phase of GGL's contract with the City, Plaintiff "developed detailed direct and independent knowledge of the Chattanooga street light system, and conducted and completed significant independent investigation and analysis of the system and the prior operations and billings of the system during earlier times, going back as much as twenty (20) years." Plaintiff also asserted that "long before filing of this action," he had "voluntarily provided" to the City and EPB "[t]he facts and analysis on which the allegations [in the complaint] are based . . . ." Plaintiff maintained that these facts and his analysis had subsequently become subject to public disclosure and investigation by the City, but Plaintiff insisted that he was the original source of the public information.

Plaintiff alleged in the complaint "at least" 240 false claims made by EPB and asserted damages of between $2,500 and $10,000 per false claim. Plaintiff identified the primary cause of the alleged overbilling as use of an incorrectly rated "kWh," or average estimate of the energy consumption per light per month, due to purported misidentification of lights in the system as Mercury Vapor ("MV") lights, which had been nearly completely replaced in 1998 by more economical High Pressure Sodium ("HPS") lights. Plaintiff included calculations purportedly demonstrating $5,914,532 in resultant overcharges during the twenty-year period prior to the complaint's filing. He further alleged additional overbilling in subdivisions of the City, totaling an estimated

---

[1] A *qui tam* action has been defined as one "'brought under a statute that allows a private person to sue for a penalty, part of which the government or some specified public institution will receive.'" *State ex rel. Landenberger v. Project Return, Inc.*, No. M2007-02859-COA-R3-CV, 2009 WL 637122, at *1 n.1 (Tenn. Ct. App. Mar. 11, 2009) (quoting BLACK'S LAW DICTIONARY 1282 (8th ed. 2004)).

overbilling in excess of $10,000,000. Plaintiff asserted that EPB had begun to correctly identify in its billing the type of lights in use only in December 2012 after Plaintiff had made his findings public. Plaintiff maintained, however, that overbilling continued at the time of the complaint's filing. In addition to actual damages for the alleged false claims, Plaintiff requested that the City be awarded treble damages and prejudgment and postjudgment interest, as well as his own recovery of attorney's fees, costs, and expenses.

The General Assembly enacted the TFCA in 2001, *see* 2001 Pub. Acts, Ch. 367 (H.B. 779), "establish[ing] penalties for filing false claims with state, county, or municipal governments." *State ex rel. Landenberger v. Project Return, Inc.*, No. M2007-02859-COA-R3-CV, 2009 WL 637122, at *3 (Tenn. Ct. App. Mar. 11, 2009). "In addition to authorizing the attorney general and reporter and local prosecuting authorities to investigate and prosecute actions under the TFCA, the act allows a complaint to be filed by a private person or qui tam plaintiff." *Id.* (citing Tenn. Code Ann. § 4-18-104). As our Supreme Court has explained:

> The Tennessee General Assembly has a long history of enacting statutes authorizing qui tam actions. For more than two centuries, it followed the traditional approach of enacting statutes providing a bounty to private plaintiffs who filed qui tam actions to enforce specific statutes while declining to adopt a generalized false claims provision similar to the Federal False Claims Act. However, in 2001, the General Assembly enacted the False Claims Act which, like its federal counterpart, targeted a much broader array of fraudulent activity perpetrated against state and local governments. Just as Congress did, the General Assembly provided a statutory jurisdictional bar that is intended to encourage private citizens to assist state and local government in ferreting out fraud but, at the same time, to prevent parasitic plaintiffs from piggybacking on public disclosures of fraud to bring qui tam actions.

*Knox Cnty. ex rel. Envtl. Termite & Pest Control, Inc. v. Arrow Exterminators, Inc.*, 350 S.W.3d 511, 522-23 (Tenn. 2011) (footnotes omitted).[2] "The phrase 'qui tam' is a shortened reference to the Latin phrase 'qui tam pro domino rege quam pro se ipso in hac parte sequitur' which means 'who pursues this action on our Lord the King's behalf as well as his own.'" *Id.* at 519 n.10.

Specifically as to the procedure in *qui tam* complaints alleging violations involving political subdivision funds, Tennessee Code Annotated § 4-18-104 (2015) provides in relevant part:

---

[2] The federal False Claims Act is codified at §§ 31 U.S.C. 3729-3733 (2006 & Supp. 2010).

(c)(1) A person may bring a civil action for a violation of this chapter for the person and either for the state in the name of the state, if any state funds are involved, or for a political subdivision in the name of the political subdivision, if political subdivision funds are involved, or for both the state and political subdivision if state and political subdivision funds are involved. The person bringing the action shall be referred to as the qui tam plaintiff. Once filed, the action may be dismissed only with the written consent of the court, taking into account the best interests of the parties involved and the public purposes behind this chapter.

(2) A complaint filed by a private person under this subsection (c) shall be filed in circuit or chancery court in camera and may remain under seal for up to sixty (60) days. No service shall be made on the defendant until after the complaint is unsealed. This subsection (c) shall not be construed as prohibiting an action being brought in federal court that involves claims from several states or claims involving federal funds.

(3) On the same day as the complaint is filed pursuant to subdivision (c)(2), the qui tam plaintiff shall serve by mail with return receipt requested the attorney general and reporter with a copy of the complaint and a written disclosure of substantially all material evidence and information the person possesses.

* * *

(7)(A) Within fifteen (15) days after receiving a complaint alleging violations that exclusively involve political subdivision funds, the attorney general and reporter shall forward copies of the complaint and written disclosure of material evidence and information to the appropriate prosecuting authority for disposition, and shall notify the qui tam plaintiff of the transfer.

(B) Within forty-five (45) days after the attorney general and reporter forwards the complaint and written disclosure pursuant to subdivision (c)(7)(A), the prosecuting authority may elect to intervene and proceed with the action.

(C)     The prosecuting authority may, for good cause shown, move for extensions of the time during which the complaint remains under seal. The motion may be supported by affidavits or other submissions in camera.

(D)     Before the expiration of the forty-five-day period or any extensions obtained under subdivision (c)(7)(C), the prosecuting authority shall do either of the following:

(i)     Notify the court that it intends to proceed with the action, in which case the action shall be conducted by the prosecuting authority and the seal shall be lifted; or

(ii)     Notify the court that it declines to proceed with the action, in which case the seal shall be lifted and the qui tam plaintiff shall have the right to conduct the action.

It is undisputed that at the time of filing the complaint, Plaintiff properly served upon the Tennessee Attorney General and Reporter a copy of the complaint and "a written disclosure of substantially all material evidence and information" Plaintiff possessed. *See* Tenn. Code Ann. § 4-18-104(c)(3). Upon Plaintiff's motion and concomitant with the filing of the complaint, the trial court entered an order on July 3, 2014, placing a seal on all filings in the action pursuant to subsection -104(c)(2). Subsequently, pursuant to subsection -102(c)(7), City Attorney Wade Hinton, having apparently received transfer of the complaint from the Attorney General and Reporter, made contact with Plaintiff's counsel. In a letter to Plaintiff's counsel dated August 28, 2014, Mr. Hinton referenced a meeting the day before in which Plaintiff's counsel had presented Plaintiff's "observations and opinions" related to the false claims complaint.[3] Mr. Hinton explained that although the City reserved the right to intervene in the litigation at a later date, it would not be participating in Plaintiff's lawsuit at that time.

Mr. Hinton further explained in his August 2014 letter that "[f]or several months, the City [had] actively worked to address the issue of whether EPB's misclassification of lighting equipment caused the City to be overbilled . . . ." As a result, City Mayor Andy Berke had assigned an internal working group to address unresolved issues surrounding overbilling by EPB. On behalf of the City, Mr. Hinton requested that Plaintiff "refrain from moving forward with litigation for 90 days to allow the City to come to a settlement with EPB, as the City strongly prefers any settlement benefit taxpayers in its entirety rather than be reduced by your attorneys' fees and the recovery fee that would be paid to

---

[3] Mr. Hinton's August 28, 2014 letter is in the record as an exhibit attached to the motion to dismiss, which was subsequently filed by EPB.

5

your client." On September 4, 2014, Plaintiff filed a notice of the City's election not to proceed and of Plaintiff's desire to proceed with the action, together with a motion to lift the seal placed on pleadings and commence service on EPB. *See* Tenn. Code Ann. § 4-18-104(c)(7)(B). The trial court entered an order granting Plaintiff's motion on the same day. The City did not ultimately intervene in this action and is not participating on appeal.

On October 2, 2014, EPB filed a Tennessee Rule of Civil Procedure 12.02(6) motion to dismiss the complaint for failure to state a claim upon which relief could be granted. EPB also requested an award of attorney's fees and expenses pursuant to Tennessee Code Annotated § 4-18-104(g)(9). EPB asserted that no relief could be granted to Plaintiff because (1) the City could not sue a City-owned utility; (2) the City as a municipal government could not maintain a claim under the TFCA against a municipal board or entity; (3) sovereign immunity for claims brought under the TFCA has not been removed by the Governmental Tort Liability Act ("GTLA"), *see* Tenn. Code Ann. §§ 29-20-101 to -408 (2012 & Supp. 2016); (4) and the claim was "objectively frivolous." EPB concomitantly filed a memorandum of law, attaching multiple exhibits, including, *inter alia*, the portion of the Charter of the City of Chattanooga ("City Charter") addressing the "Municipal Electric System," the current "Power Contract" between the City and Tennessee Valley Authority ("TVA"), the current franchise agreement between the City and EPB, and letters authored by City Attorney Hinton and Mayor Berke concerning Plaintiff's allegations of EPB's overbilling.

On October 3, 2014, Plaintiff filed a motion requesting that the trial court treat EPB's motion to dismiss as a motion for summary judgment. *See* Tenn. R. Civ. P. 12.03 ("If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . . ."). Following a hearing, the trial court entered an order on December 4, 2014, granting Plaintiff's motion in part upon ruling that EPB's motion would be treated as one for summary judgment "to the extent that it turns on the issue of whether, as a matter of law, the City and EPB are one and the same or whether or not they are separate legal entities[.]" The court previously had, upon EPB's motion, stayed discovery pending the hearing. In its December 2014 order, the court granted the parties opportunity for limited discovery relevant to the issue considered for summary judgment.

In an October 8, 2014 pleading entitled "Plaintiffs' Response to Defendant's Motion to Stay Discovery," Plaintiff attached as an exhibit a document entitled "Filing Information," originating with the Tennessee Secretary of State's Office and reflecting EPB's status as of the document's printed date of October 2, 2014. The following is listed under "General Information" for EPB:

| Filing Type: | Corporation Non-Profit – Domestic |
|---|---|
| Filing Date: | 10/28/2009 1:25 PM |
| Status: | Active |
| Duration Term: | Perpetual |
| Business Type: | Public Authority |
| Public/Mutual Benefit: | Public |
| Formation Locale: | TENNESSEE |
| Date Formed: | 10/28/2009 |
| Fiscal Year Close[:] | 6 |

EPB subsequently filed a supplemental brief in support of its motion to stay discovery, arguing, *inter alia*, that the exhibits attached to the motion to dismiss involved legal rather than factual issues and did not require treatment of the motion as one for summary judgment. EPB attached to this brief additional exhibits, including, *inter alia*, a "Filing Acknowledgment" issued to EPB by the Tennessee Secretary of State on October 28, 2009, and the corresponding "Charter Filing" submitted to the Secretary of State by EPB. The October 28, 2009 Filing Acknowledgment reflects the same status information for EPB as the "Filing Information" document obtained by Plaintiff. The "Charter Filing" includes the following paragraph regarding EPB's view of the effect of the filing on its status:

> Electric Power Board of Chattanooga is an independent board of the City of Chattanooga, Tennessee, and the filing of this Charter shall not be deemed to modify, waive, or extinguish any of the rights, privileges, immunities, or protections afforded Electric Power Board of Chattanooga under the Enabling Acts, the laws of the State of Tennessee, or of other jurisdictions, as an independent board of the City of Chattanooga, Tennessee.

Harold DePriest, EPB's President and Chief Operating Officer, testified through deposition that EPB filed its charter with the Tennessee Secretary of State in October 2009 in order to obtain a certificate of authority that could in turn be presented to the Georgia Secretary of State. EPB had been empowered since its creation through the City Charter, pursuant to the Electric Plant Law of 1935, to obtain electric facilities and provide electric services to Catoosa County and Walker County in Georgia. According to Mr. DePriest, EPB sought with its 2009 record filing to obtain a statewide franchise in Georgia that would allow it to provide service in the "small area of north Georgia" served by EPB without entering into separate contracts with each municipality involved.

7

During the discovery process, Plaintiff filed a motion to compel EPB to fully respond to "continuing requests for production of documents and related discovery" on February 5, 2015. Plaintiff attached to this motion a brief and several exhibits, among them a "Certificate of Authority," granted by the Georgia Secretary of State on January 27, 2010, to EPB, authorizing EPB as a "Foreign Non-Profit Corporation." Also attached was EPB's application for the Georgia certificate of authority, which included a "Certificate of Existence" issued by the Tennessee Secretary of State, certifying that EPB:

- is a Corporation duly incorporated under the law of this State with a date of incorporation and duration as given above;
- has paid all fees, taxes and penalties owed to this State which affect the existence/authorization of the business;
- has appointed a registered agent and registered office in this State;
- has not filed Articles of Dissolution or Articles of Termination.

Upon EPB's response in opposition to the motion to compel and a subsequent hearing, the trial court entered an order on March 6, 2015, granting in part and denying in part Plaintiff's motion to compel and extending the discovery period.

On May 29, 2015, EPB filed with the trial court a statement of undisputed material facts with an attached three-volume appendix of supporting documents. On June 19, 2015, Plaintiff responded by filing a "Statement of Disputed Material Facts," along with objections and responses to EPB's statement. Plaintiff simultaneously filed a brief in opposition to the motion for summary judgment, together with multiple exhibits. These included, *inter alia*, a copy of a December 3, 2011 letter from the Secretary of State Business Services Division to EPB, addressed "Dear Business Entity," notifying EPB that statutory grounds then existed for dissolving EPB as a corporation because an annual report due by October 1, 2011, had not been filed. Attached were copies of EPB's subsequent filings of annual reports with the Secretary of State, dated December 13, 2011; August 16, 2012; June 28, 2013; and September 17, 2014, with EPB listed as a public benefit corporation. Also included was a copy of an "Assistance Agreement," dated effective January 3, 2014, awarding a $111,567,606 grant to EPB from the United States Department of Energy ("DOE") for a "Smart Grid Investment" program. The grant award listed EPB's name as "ELECTRIC POWER BOARD OF CHATTANOOGA (INC)." Plaintiff subsequently filed a copy of EPB's corresponding August 6, 2009 grant application to DOE, reflecting EPB's description of its own legal name as "Electric Power Board of Chattanooga."

Plaintiff concomitantly filed an amendment to the original complaint, alleging additional claims of (1) "Breach of Contractual Rates, Accompanied by False Statements

8

and False Claims"; (2) "Breach of Binding Rate Schedules and Determinations Issued by TVA and Binding on EPB and [the City]"; and (3) "Overlapping Claims of Breach of Contract, Breach of Binding TVA Rate Determinations and False Claims." EPB subsequently filed a response, averring that the additional claims alleged in the amended complaint could not survive summary judgment, as well as a response to Plaintiff's statement of disputed facts.

Following a hearing, the trial court entered a memorandum opinion and order on July 23, 2015, denying EPB's motion for summary judgment upon finding that the relationship between the City and EPB was a genuine issue of material fact. The court first "summarized and paraphrased" undisputed facts as follows:

1. In 1935, EPB was created by an act of the Tennessee Legislature which amended the charter of the City of Chattanooga to create the Electric Power Board.

2. The creation of EPB as an independent board of the City by amendment to the City's Charter has been recognized by courts and regulatory agencies of the State of Tennessee.

3. The City, which Mr. Lepard claims should be the Plaintiff, has recognized that EPB is part of the City government when it has applied for bonds or issue[d] financial statements. It is noted that the Plaintiff "disputes" these facts. However, the Plaintiff's response indicates [he does] not really dispute that the City has made these public assertions. [Plaintiff] simply contend[s] that the assertions are not determinative of the question.

4. EPB has recognized in public documents that it is an independent board of the City.

5. The City Council appoints members of the board which govern EPB.

6. While it is true that EPB is empowered to perform many of its business functions independently, that freedom is granted by provisions in the City of Chattanooga's Charter.

7. EPB is required to file financial statements with the City.

8. The City of Chattanooga's charter dictates how many members are on EPB's board and how those members are appointed. It also dictates how those members may be removed.

9. EPB is entitled to sovereign immunity protections of the Governmental Tort Liability Act.

(Citations to record omitted.) We note that the trial court's summary of undisputed facts comports with the parties' factual summaries on appeal, except that Plaintiff argues that EPB is a nonprofit corporation, separate from the City and not entitled to sovereign immunity.

In initially finding that a disputed issue of material fact existed regarding EPB's status in relation to the City, the trial court referenced the record filing made by EPB with the Tennessee Secretary of State on October 28, 2009. The trial court stated in pertinent part:

The Court finds that if it is determined that the City and EPB are, for the purposes of this case, the same public entity, the case will be dismissed. . . . [T]he Court also finds that there is an issue of fact as to whether EPB and the City are the same or whether EPB is "independent enough" to justify the continuation of the False Claim[s] Act. One question of fact that leads to this conclusion is that EPB registered with the Tennessee Secretary of State as a non-profit corporation. EPB claims this was done to allow it to conduct certain business, but it does raise an issue of fact in regard to the "separateness" issue. Also, if EPB is a corporation separate from the City, EPB could fit the definition of a "person" under the False Claims Act.

Also, Exhibit 7 to EPB's motion is a letter from the City's attorney, indicating the City is in negotiations with EPB to resolve the issue of possible overbilling. The fact that the parties were in negotiations also raises an issue of fact on the issue of whether they are separate.

(Emphasis in original.)

On July 28, 2015, EPB filed a "Request for Reconsideration" with supplemental documents filed on August 6 and 12, 2015, respectively, including declarations by City Attorney Hinton and Kevin Rayburn, Assistant Director of the Business Services Division with the Tennessee Secretary of State's Office. In his declaration, Mr. Hinton clarified portions of his August 28, 2014 letter to Plaintiff's counsel, in particular maintaining that "EPB is a part of the City of Chattanooga, and the City of Chattanooga

has publicly recognized this fact many times over the years. . . . Any discussions by the City of Chattanooga with EPB about electric billings did not arise because of any 'separateness' between the City and EPB."

Mr. Rayburn, in a declaration and supplemental declaration, explained the Secretary of State's method of processing "record filings made under the Tennessee Nonprofit Corporation Act by public governmental corporations or authorities created by or established under the authority of a municipal corporation or county or both." Mr. Rayburn stated in pertinent part:

> The Office of the Tennessee Secretary of State accepts record filings from public governmental corporations or authorities created by or established under the authority of a municipal corporation or county or both. This Office does so, in part, because the Tennessee Nonprofit Corporation Act, Chapters 51-68 of Title 48 of the Tennessee Code, specifies that it can apply to these types of public organizations. *See* Tenn. Code Ann. § 48-68-101(c).

> As such, any filing made by a public governmental corporation or authority is identified in our records with the "filing type" being "Nonprofit Corporation – Domestic." This designation does not mean that a public governmental corporation or authority is, in fact, a private non-profit corporation. Rather, this Office <u>generally</u> uses the "filing type" of "Nonprofit Corporation – Domestic" to designate the state statute under which the filing occurred. <u>However, this Office will also use the "filing type" of "Nonprofit Corporation – Domestic" for municipal corporations and other governmental entities that tender a record filing to the Tennessee Secretary of State and that are not subject to the Tennessee Nonprofit Corporation Act.</u>[4]

> When the Office of the Tennessee Secretary of State issues a "Certificate of Existence" relating to a public governmental corporation or authority, the Certificate of Existence routinely indicates that the public or governmental corporation or authority "is a Corporation duly incorporated under the law of this State with a date of incorporation and duration as given above." This statement does not state or imply that the public governmental corporation or authority is, in fact, a private, non-profit corporation. Rather, the use of the generic term "corporation" in the

---

[4] The underlined text indicates additions made by Mr. Rayburn in his supplemental declaration.

Certificate of Existence can, and does, describe public governmental corporations or authorities.

On October 28, 2009, the Electric Power Board of Chattanooga made a record filing of its enabling acts with the Office of the Tennessee Secretary of State. The filing acknowledgement issued by this Office identified and recognized EPB's "Business Type" as being a "Public Authority." The "filing type" designation showing "Nonprofit Corporation – Domestic" was used to identify the statute under which the filing occurred, the Tennessee Nonprofit Corporation Act, and the "filing type" is not used by this Office to identify what type of entity EPB may be.

This Office takes no position on what the legal status of the Electric Power Board of Chattanooga is. However, if EPB was an independent board of the City of Chattanooga at the time it made its record filing in 2009, as EPB indicated in its filing, then nothing in EPB's filing would have served to change EPB's status as a board of the City of Chattanooga to that of a non-profit corporation.

A Certificate of Existence issued to EPB will routinely identify EPB as being "a Corporation duly incorporated under the law of this State with a date of incorporation and duration as given above." Again, this Office takes no position on what the legal status of the Electric Power Board of Chattanooga is. However, if EPB is an independent board of the City of Chattanooga, then nothing in the Certificate of Existence issued by the Office of the Tennessee Secretary of State would serve to change EPB's status from a board of the City of Chattanooga to that of a non-profit corporation.

Plaintiff subsequently filed a brief in opposition to EPB's request and also attached supplemental documentation, including, *inter alia*, a declaration, dated August 21, 2015, executed by Joan MacLeod Heminway, W.P. Toms Distinguished Professor of Law at the University of Tennessee College of Law. Professor Heminway explained that she taught "Business Associations" and other business law courses at the College of Law and researched and wrote in the areas of corporate governance, corporate finance, and securities regulation. She proffered her conclusions and opinion based on her review and evaluation of "the charter of the Electric Power Board of Chattanooga ("EPB"), as filed with the Secretary of State of the State of Tennessee . . . on October 28, 2009 . . . and the conclusions set forth in the Declaration of Kevin Rayburn, filed with this court in this case on August 12, 2015 . . . ."

Professor Heminway stated in relevant part:

The Charter was filed by the Tennessee Secretary of State under the Tennessee Nonprofit Corporation Act on October 28, 2009.

Under Tenn. Code Ann. § 48-52-103, the corporate existence of EPB began when the Charter was filed by the Tennessee Secretary of State on October 28, 2009.

The Tennessee Nonprofit Corporation Act, Tenn. Code Ann. § 48-52-102(a)(2), expressly contemplates two alternative types of nonprofit corporation, a public benefit corporation and a mutual benefit corporation. Those are the only two forms of nonprofit corporation expressly provided for under Tennessee law.

The Charter indicates EPB is organized under the Tennessee Nonprofit Corporation Act as a public benefit corporation.

Tenn. Code Ann. [§] 48-68-101(c) does not provide for a form of nonprofit corporation distinct from public benefit and mutual benefit corporations. Rather, a logical reading of this statutory section in the context of the matters at issue in this case is that the statute clarifies that "[g]overnmental . . . authorities created by or established under the authority of a municipal corporation or county, or both" can be incorporated in Tennessee as a nonprofit corporation like other nonprofit organizations.

Based on the foregoing, I disagree with the conclusions stated in paragraphs 8 and 9 of The Rayburn Declaration to the extent that those paragraphs suggest that there would be no change in "EPB's status as a Board of the City of Chattanooga to that of a non-profit corporation." While incorporation does not change EPB's status as a Board of the City of Chattanooga, it does establish EPB as a distinct legal entity with corporate status under Tennessee law. Specifically, upon its incorporation on October 28, 2009, EPB became a public benefit corporation organized under the Tennessee Nonprofit Corporation Act, with the benefits and obligations attendant to a Tennessee nonprofit public benefit corporation as provided under the Tennessee Nonprofit Corporation Act.

In summary, in my opinion, under Tennessee law, it is not impossible or inconsistent with the Tennessee Nonprofit Corporation Act

13

for an independent board like EPB to incorporate as EPB did. The act of incorporation does change the legal status of EPB from an unincorporated organization to a corporation.

The scope of my inquiry into this matter has not extended beyond an assessment of whether EPB was legally organized as a public benefit corporation under the Tennessee Nonprofit Corporation Act. In my opinion it was.

(Paragraph numbering omitted.)

The trial court conducted a hearing on EPB's "Request for Reconsideration" over the course of two days on August 17 and 24, 2015. In a memorandum opinion and order entered September 11, 2015, the court treated EPB's request for reconsideration as a motion to alter or amend the court's July 23, 2015 order. The court found that contrary to its earlier ruling, the effect of EPB's 2009 filing with the Secretary of State was a matter of law rather than disputed material fact. The court further found, however, that it need not determine whether EPB's 2009 filing had changed its status to that of a corporation because "EPB, whatever its status, is an entity that is wholly owned by the City of Chattanooga." The court thus determined that a case of the City's suing EPB would be an impermissible "case of the City suing itself" and granted summary judgment in favor of EPB. The court also found Plaintiff's argument that this action presents a justiciable issue that must be resolved to be without merit. Finally, the court denied Plaintiff's motion to amend the complaint upon finding that the motion had been filed subsequent to EPB's motion to dismiss. Plaintiff timely appealed.

## II. Issues Presented

Plaintiff presents two issues on appeal, which we have restated as follows:

1.  Whether the trial court erred by granting summary judgment in favor of EPB upon its finding that the City and EPB are one entity for purposes of actions filed under the TFCA.

2.  Whether the trial court erred by denying Plaintiff's motion to amend the original complaint.

EPB presents two additional issues, which we have similarly restated as follows:

3.  Whether summary judgment in favor of EPB would be warranted on any of the three grounds argued by EPB, including the two grounds

14

not addressed by the trial court: (A) that a municipality may not maintain an action under the TFCA against a municipal board or other governmental entity and (B) that claims brought under the TFCA are not among those for which sovereign immunity has been removed by the GTLA.

4.      Whether the trial court's denial of Plaintiff's motion to amend the original complaint constituted harmless error.

## III. Standard of Review

The grant or denial of a motion for summary judgment is a matter of law; therefore, our standard of review is *de novo* with no presumption of correctness. *See Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015); *Dick Broad. Co., Inc. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 671 (Tenn. 2013) (citing *Kinsler v. Berkline, LLC*, 320 S.W.3d 796, 799 (Tenn. 2010)). As such, this Court must "make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *Rye*, 477 S.W.3d at 250. As our Supreme Court has explained concerning the requirements for a movant to prevail on a motion for summary judgment pursuant to Tennessee Rule of Civil Procedure 56:

> We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence must do more than make a conclusory assertion that summary judgment is appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record." *Id.* When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.,* 475 U.S. at 586, 106 S.Ct. 1348. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a

rational trier of fact to find in favor of the nonmoving party. If a summary judgment motion is filed before adequate time for discovery has been provided, the nonmoving party may seek a continuance to engage in additional discovery as provided in Tennessee Rule 56.07. However, after adequate time for discovery has been provided, summary judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced, despite the passage of discovery deadlines, at a future trial.

*Rye*, 477 S.W.3d at 264-65 (emphasis in original). Pursuant to Tennessee Rule of Civil Procedure 56.04, the trial court must "state the legal grounds upon which the court denies or grants the motion" for summary judgment, and our Supreme Court has instructed that the trial court must state these grounds "before it invites or requests the prevailing party to draft a proposed order." *See Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303, 316 (Tenn. 2014).

## IV. Relationship of EPB to the City

Plaintiff contends that the trial court erred by granting summary judgment in favor of EPB on the basis of the court's finding that EPB and the City are one entity. Plaintiff argues that EPB is a nonprofit corporation, acting as a vendor, separate from the City and unprotected by sovereign immunity. He further argues that as a corporation, EPB is a "person" as defined in the TFCA and can therefore be sued under the TFCA. *See* Tenn. Code Ann. § 4-18-102(3) (2015) ("'Person' means any natural person, corporation, firm, association, organization, partnership, limited liability company, business, or trust[.]"). EPB asserts that its status as an instrumentality of the City was unchanged by its October 2009 filing with the Secretary of State. EPB therefore contends that the trial court properly found that the instant action could not be sustained because the City cannot sue itself. *See United States v. Interstate Commerce Comm'n*, 337 U.S. 426, 430 (1949) (noting that it is a "long-recognized general principle that no person may sue himself" while also explaining that "courts must look behind names that symbolize the parties to determine whether a justiciable case or controversy is presented."); *see also Lawrence Cnty. v. White*, 288 S.W.2d 735, 739 (Tenn. 1956) ("Of course it is obvious and clear that the County would not, cannot, and should not be able to sue itself . . . ."). Upon our thorough review of the record and applicable authorities, we conclude that the trial court correctly determined that proceeding with this action would constitute an injusticiable instance of the City's suing itself.

It is undisputed that EPB was created in 1935 as an independent Board of the City, pursuant to the Private Acts of Tennessee of 1935, with the purpose of creating and operating an electric power system in Hamilton County, Tennessee, and adjoining counties in Tennessee and Georgia. As noted by EPB, this Court rendered a decision in 1991 addressing the legal relationship between the City and EPB in an action brought under the GTLA. *See Cline v. City of Chattanooga*, No. 976, 1991 WL 25941 (Tenn. Ct. App. Mar. 4, 1991), *perm. apps. denied* (Tenn. Aug. 5, 1991). The plaintiff in *Cline* filed a negligence action against the City and EPB as two separate defendants, alleging damages resulting from an automobile accident that occurred when she swerved to avoid a police cruiser parked by a City officer who was assisting in traffic control while EPB personnel repaired downed power lines. *See id.* at *3. This Court reversed the trial court's finding that the plaintiff could sue both the City and EPB, holding, *inter alia*, that EPB "is simply an instrumentality or arm of the city." *Id.* at *4. As this Court explained:

> The Electric Power Board was created by Private Acts of Tennessee of 1935, Chapter 455. This act, as subsequently amended, is codified in the Charter of the City of Chattanooga, as Chapter II, Sections 10.22 through 10.35, entitled "Electric Power Board of Chattanooga." These provisions lead directly to the conclusion that the Electric Power Board is simply an instrumentality or arm of the city. Among other things, the city attorney is granted the power to initiate proceedings to oust Board members, the Board is empowered to acquire and maintain power systems *for the City of Chattanooga,* the power of eminent domain must be exercised in the name of the city, the Board must deposit all revenues in the name of the City of Chattanooga and may only draw on these funds through the City Treasurer and the City of Chattanooga is the owner of the Electric Power Board's system, wherever located. All these elements are totally inconsistent with the existence of the Board as a legal entity existing separate and apart from the City of Chattanooga. Additionally *Tennessee Electric Power Co. v. City of Chattanooga,* 114 S.W.2d 441, (Tenn. 1937), in passing upon the constitutionality of Chapter 455, Private Acts 1935 said: "The city, under the act, is empowered to construct or acquire a power plant. The Power Board is the mere agency of the city in the construction or acquisition of the power plant." We hold that this resolution of that issue still obtains.

*Id.* (emphasis in original)*; see also Keeble v. Loudon Utils.*, 370 S.W.2d 531, 534 (1963) (concluding that an electric utility created under the Municipal Electric Plant Law of 1935 was "not a legal entity, separate and apart from the City of Loudon, but [was] a department of the City of Loudon."). Although in *Cline*, this Court addressed specifically whether the City and EPB could be sued as two separate entities by a third party, we conclude that this Court's holding also means that unless something has occurred to

change EPB's relationship to the City since 1991, the City cannot sue EPB because it would be essentially suing itself. *See Interstate Commerce Comm'n*, 337 U.S. at 430; *Lawrence Cnty.*, 288 S.W.2d at 739.

Plaintiff asserts that such a change in EPB's status did occur when it made the October 28, 2009 record filing with the Tennessee Secretary of State. Plaintiff argues that the filing caused EPB to become a nonprofit corporation, separate from the City and capable of being sued by the City. The trial court found, however, that the question of whether EPB had become a nonprofit corporation was not relevant to the issue at hand because even if EPB is a nonprofit corporation, it is still owned by the City with all of its assets ultimately belonging to the City. In its September 2015 memorandum opinion and order, the trial court initially reviewed the history of EPB's creation under the Municipal Electric Plant Law of 1935, *see* Tenn. Code Ann. §§ 7-52-101 to -611 (2015), and the City Charter, which authorizes the City "to purchase, construct . . . to maintain, operate and regulate an electric light and power plant . . . ." The trial court then made the following specific findings, in pertinent part, regarding EPB's relationship to the City:

> It is clear from these laws that EPB exists, only because the City of Chattanooga, operating under authority granted it by the legislature, created it.

> In addition, there are numerous other facts which the parties agree or the Court finds are not in dispute in this case. They are as follows:

> 1. The creation of EPB as an independent board of the City, by amendment to the City's Charter, has been recognized by courts and regulatory agencies in the State of Tennessee.

> 2. The City has recognized that EPB is part of the City government when it has applied for bonds or issued financial statements.

> 3. The City Council appoints members of the board which govern EPB.

> 4. While it is true that EPB is empowered to perform many of its business functions independently, that freedom is granted to it by provisions in the City of Chattanooga's Charter.

> 5. EPB is required to file financial statements with the City.

18

6.    The City of Chattanooga's charter dictates how many members are on EPB's board and how those members are appointed. It also dictates how those members may be removed.

7.    In numerous Court decisions, EPB has been granted the sovereign immunity protections provided by the GTLA.[5]

With all of these undisputed facts, the only way this Court could find that EPB is not a part of the City of Chattanooga is to find that its "incorporation" in 2009 changed its legal status.

In 2009, EPB made what it refers to as a "record filing" with the Secretary of State. The filing consisted of a copy of the charter provisions which authorized the creation and operation of EPB. In response, the Secretary of State issued a Filing Acknowledgment, which noted that the "Filing Type" was "Corporation Non Profit – Domestic." The business type listed on the Acknowledgment is "Public Benefit." The document goes on to state that EPB must file annual reports and designate an agent for service of process.

EPB argues that the filing does not transform it from a public entity to a private corporation separate from the City. In support [of] its position, EPB produced similar acknowledgments from the Secretary of State for numerous municipalities such as the cities of Pigeon Forge, Oak Ridge, Cleveland and Athens. In addition, there are acknowledgments for governmental agencies, such as the Chattanooga Metropolitan Airport Authority. All of these cities and authorities are listed as non-profit corporations. EPB argues that it certainly cannot be held that all of those cities and agencies are no longer governmental entities but rather private corporations. To boil down EPB's argument, it says the filing was an administrative matter, for which the Secretary of State had "ill-fitting

_____

[5] *See, e.g., Cline*, 1991 WL 25941, at *6-7 (concluding that although the plaintiff could not sustain a negligence action against EPB as an instrumentality of the City under the GTLA, the plaintiff's action against the City itself could proceed); *AT & T Corp. v. L & M Music, Inc.*, No. 1:06-CV-209, 2009 WL 838170, at *3 (E.D. Tenn. Mar. 30, 2009) ("Here, EPB is a governmental entity falling under the TGTLA's provisions because it is a division of the Electric Power Board of the City of Chattanooga, a municipal corporation."); *Harris v. City of Chattanooga*, 507 F. Supp. 374, 377 (N.D. Ga. Feb. 5, 1981) (applying Georgia law to find "the defendant City of Chattanooga, d/b/a Electric Power Board" cloaked "with a vestige of [the state of Georgia's] sovereignty.").

forms." Whatever the effect, EPB argues, it is not that EPB is now a private corporation, separate from the City.

The Plaintiff looks at the acknowledgment issued by the Secretary of State and says "a corporation is a corporation is a corporation." Plaintiff's argument is that EPB applied for corporate status and received corporate status. Now, Plaintiff argues, EPB must suffer the consequences of that status. In support of its argument, the Plaintiff cites the decision of the Tennessee Supreme Court in Applewhite v. Memphis State University, 495 S.W.2d 190 (Tenn. 1973). In Applewhite, the facts showed that Memphis State (the University) owned a publishing company which published scholarly and historical books and papers. Mr. Applewhite, the plaintiff in that case, felt he was libeled in one of those publications. He sued the publishing company and the University for libel. The trial judge dismissed the suit, stating that the University and the publishing company were governmental entities, entitled to sovereign immunity. On appeal, the Supreme Court agreed that the University was subject to sovereign immunity, but held that the publishing company was not. The court ruled that the publishing company was a corporation and the fact that it was a corporation wholly owned by the University did not change that fact. Mr. Applewhite's suit against the publishing company was allowed to go to trial.

The Plaintiff argues that this case is the same as Applewhite. It is not. In Applewhite, a third party was suing the publishing company. The Supreme Court said the fact that the publishing company was wholly owned by University did not protect it from suit. In this case, however, it is the City of Chattanooga which is suing EPB, the corporation which it owns in its entirety.[FN]

> [FN]This Court does not find that EPB is a corporation. Neither does it find that it is not a corporation. It is not necessary for the Court to make that finding to resolve the issue before it in this case and, therefore, does not do so.

Even if EPB could be classified as a corporation, that does not change the following facts.

1. The members of EPB Board of Directors are appointed by and may be removed only by the City.

20

2. EPB is still required to file financial reports with the City.

3. Any money EPB derives from its operations is deposited in bank accounts in the name of the City.

4. Any land acquired by EPB for its operations is titled in the name of the City.

5. EPB cannot be sold or liquidated without the consent of the City and the approval of the City's voters.

6. No court has found that EPB and the City are separate. All judicial decisions have held that they are one and the same.

There are other facts which show the connection between the City and EPB.

After much time, several hearings and thousands of pages of pleadings, we circle back to the first point made by EPB in its motion to dismiss. It is found that EPB, whatever its status, is an entity that is wholly owned by the City of Chattanooga. The City of Chattanooga suing EPB is a case of the City suing itself. If a money judgment were rendered, Mr. Lepard and his attorneys would get part of that recovery. The rest of the money would merely be transferred from one account of the City to another account of the City. As a matter of law, such an exercise in futility cannot be allowed.

The trial court thus found it unnecessary to determine whether EPB's 2009 filing of its charter with the Tennessee Secretary of State established EPB as a nonprofit corporation because the court found that even if EPB were a corporation, it would still be wholly owned by the City. Plaintiff concedes that EPB is affiliated with the City and that through the City Charter, EPB was established as an independent board of the City. Plaintiff argues, however, that the City and EPB are "sufficiently separate with respect to this controversy that the City's claim, properly appreciated, does not amount to suing itself[.]" Plaintiff further argues that "[k]nowing what EPB is, whether a corporation or not, is critical to the determination of this motion." Plaintiff asserts that EPB's status is a genuine issue of material fact that must be determined at trial in order to resolve this action. We disagree. We determine that the undisputed facts demonstrate that EPB did not change its status as an instrumentality of the City with its 2009 filing. We therefore conclude that the trial court properly found no genuine issue of material fact regarding EPB's status that would provide a basis for the City to bring an action against EPB.

21

The City is a municipal government that was incorporated under state law in 1839. *See Sims v. Chattanooga*, 70 Tenn. 694, 696 (1879) ("On the 20th of December, 1839, the Legislature passed an act incorporating the town of Chattanooga . . . ."). Municipalities, such as the City in this case, "may exercise only those express or necessarily implied powers delegated to them by the Legislature in their charters or under statutes." *See Allmand v. Pavletic*, 292 S.W.3d 618, 625 (Tenn. 2009) (quoting *City of Lebanon v. Baird*, 756 S.W.2d 236, 241 (Tenn. 1988)). Furthermore, "'[t]he provisions of the charter are mandatory, and must be obeyed by the city and its agents . . . .'" *Allmand*, 292 S.W.3d at 625 (quoting *Barnes v. Ingram*, 397 S.W.2d 821, 825 (Tenn. 1965) (in turn quoting *Marshall & Bruce Co. v. City of Nashville*, 71 S.W. 815, 819 (Tenn. 1903))). As this Court has recently explained regarding the authority granted to municipalities and their appointed power boards:

> The Electric Plant Law grants municipalities and their appointed power boards "liberal" powers. Tenn. Code Ann. § 7-52-134(b). The statute provides:
>
>> This part is remedial in nature and the powers hereby granted shall be liberally construed to effectuate the purpose of this part, and, to this end, every municipality shall have *power to do all things necessary or convenient* to carry out the purpose of this part *in addition to the powers expressly conferred* in this part.
>
> *Id.* (emphasis added [in *Simerly*]). The Electric Plant Law notes that "all powers to acquire, improve, operate and maintain, and to furnish electric service, and all powers necessary or convenient to furnishing electric service, conferred by this part shall be exercised on behalf of the municipality by the supervisory body and the superintendent, respectively." Tenn. Code Ann. § 7-52-114(c).

*Simerly v. City of Elizabethton*, No. E2009-01694-COA-R3-CV, 2011 WL 51737, at *1 (Tenn. Ct. App. Jan. 5, 2011), *perm. app. denied* (Tenn. Apr. 13, 2011).

Despite this liberal grant of authority, as EPB notes, the City is statutorily precluded from disposing of its electric system without following a strictly prescribed procedure to obtain a majority vote of the City's citizens in favor of a resolution approving the proposed disposition. *See* Tenn. Code Ann. § 7-52-132 (2015) ("The governing body of the municipality may dispose of all or substantially all of the electric plant acquired by means of bonds issued under this part, but only with the approval of the

supervisory body and a majority of those voting in an election . . . .").[6]  It is undisputed that the City followed no such procedure and put forth no resolution to the public to dispose of the City's ownership of or control over EPB.

Mr. DePriest acknowledged in his deposition testimony that he previously had described EPB as an "independent entity" while testifying before a Tennessee state senate committee.  He explained that he had been emphasizing EPB's "independence" from the City as a layperson would understand it.  He continued:

> In terms of our finances, when our customers pay their bills, that money goes into an account owned by the City.  When we write checks, we are issuing warrants to the City, which issues the checks on our behalf from those accounts.  When we borrow money and we issue bonds, they are issued and must be authorized by the City and in the name of the City on behalf of EPB.  When we buy property, the property is purchased in the name of the City on behalf of EPB.  When we sell property, it has to go by the City.  They have first choice in authorizing us to sell the property.

When questioned during his deposition regarding the purpose behind the 2009 filing with the Tennessee Secretary of State, James David Wade, an Executive Vice President and the Chief Operating Officer for EPB, stated:  "I don't have any information or don't have any reason to believe or any reason to wonder why we would think there was even a possibility of incorporating since we are part of the City."  Gregory Eaves, another Executive Vice President and the Chief Financial Officer for EPB, testified during his deposition that EPB is "part of the City of Chattanooga.  We couldn't bring it – change our legal character."  Like Mr. DePriest, he stated that he understood the record filing to be a part of the process necessary to obtain a statewide franchise.  Reviewing bank statements related to EPB's accounts, Mr. Eaves noted that EPB's accounts are held in the name:  "City of Chattanooga Electric Power Board."

Through Chapter 2, Section 10 of the City Charter, the City has authorized EPB, pursuant to the Electric Plant Law of 1935, to act on the City's behalf to, *inter alia*, purchase and construct an electric power plant and distribution system, contract with TVA, manage and control its own operations and employees, and charge the City for electric services.  Also pursuant to Section 10 of the City Charter, as noted by this Court in *Cline*, "the Board is empowered to acquire and maintain power systems *for the City of Chattanooga*, the power of eminent domain must be exercised in the name of the city, the

---

[6] An "electric plant" as defined in the statute "means generating, transmission, or distribution systems, together with all other facilities, equipment and appurtenances necessary or appropriate to any such systems for the furnishing of electric power and energy for lighting, heating, power or any other purpose for which electric power and energy can be used[.]"  Tenn. Code Ann. § 7-52-102(3) (2015).

Board must deposit all revenues in the name of the City of Chattanooga and may only draw on these funds through the City Treasurer and the City of Chattanooga is the owner of the Electric Power Board's system, wherever located." *Cline*, 1991 WL 25941, at *4 (emphasis in original). It is undisputed that EPB's 2009 filing of its charter with the Secretary of State was not prompted or followed by any related amendment to the City Charter. EPB's status as an agency of the City, as well as the City's ultimate control over EPB, as evinced by the City Charter, remains unchanged since this Court's 1991 *Cline* decision. *See id.*; *cf. Maury Cnty. Bd. of Pub. Utils. v. City of Columbia by & through Bd. of Pub. Utils of City of Columbia*, 854 S.W.2d 890, 891 (Tenn. Ct. App. 1993), *perm. app. denied* (Tenn. June 1, 1993) (concluding that "[t]he statute provides the City may contract on its own or act through the Board it has appointed" and therefore determining to be unavailing the defendant city's argument that it could not be sued pursuant to its utility board's rate contract with a third party).

As the trial court noted, Plaintiff relies in part on our Supreme Court's decision in *Applewhite v. Memphis State Univ.*, 495 S.W.2d 190 (Tenn. 1973), in which the Court determined that a publishing company, formed as a nonprofit corporation by the defendant state university, did not enjoy the same soverign immunity from a libel suit as the university. *Applewhite*, 495 S.W.2d at 197 ("[A] business corporation is a distinct legal entity separate from the State, even though the State may be its sole stockholder, and, as such, is without certain immunities."). We agree with the trial court that the instant action is immediately factually distinguishable because the *Applewhite* plaintiff was a third party unrelated to the governmental entity at issue. *See id.* Moreover, in *Applewhite*, the defendant university had clearly incorporated its publishing company as an entity separate from, albeit owned by, the university. *See id.* ("Where an educational institution separately incorporates its publishing activities and keeps such funds distinct from general university funds, it does not seem improper to consider the university immune and the publishing corporation subject to suit."). Contrary to Plaintiff's argument, we determine that under the Electric Plant Law of 1935 and the City Charter, EPB has remained an instrumentality of the City rather than a separate entity.[7]

Plaintiff also relies in his reply brief on Professor Heminway's opinion that EPB's 2009 filing with the Tennessee Secretary of State "establish[ed] EPB as a distinct legal entity with corporate status under Tennessee law." The trial court did not address Professor Heminway's declaration in its September 2015 memorandum opinion and order. During the summary judgment hearing, EPB's counsel argued that Professor

---

[7] Likewise, we are not persuaded by Plaintiff's arguments that the Tennessee Secretary of State's yearly requirement of an annual report from EPB since the 2009 record filing or DOE's insertion of "(INC)" into its description of EPB in a 2010 grant award demonstrate a change in EPB's fundamental status as an instrumentality of the City.

Heminway's declaration did not meet the threshold requirements for expert testimony under Tennessee Rules of Evidence 702 and 703. Rule 702 provides:

> **Testimony by experts.**—If scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise.

As pertinent to EPB's counsel's argument during the hearing, Tennessee Rule of Evidence 703 further provides: "The court shall disallow testimony in the form of an opinion or inference if the underlying facts or data indicate lack of trustworthiness." EPB's counsel maintained that Professor Heminway's declaration was "based upon unreliable facts" because "she sa[id] the charter indicates EPB is organized under the Tennessee Nonprofit Corporation Act as a public benefit corporation" when the trial court had found that "EPB was created by act of the general assembly." The trial court, however, did not directly rule on the potential admissibility of Professor Heminway's expert testimony. On appeal, Plaintiff does not mention in the principal brief Professor Heminway's declaration but does begin the argument in his reply brief by stating that EPB "ignores the declaration of [Professor] Heminway."

Inasmuch as the trial court did not address the admissiblity of Professor Heminway's declaration and EPB has not raised an issue of admissibility on appeal, we consider Professor Heminway's deposition as indicative of her potential expert testimony if the case were to go to trial. *See Davis v. McGuigan*, 325 S.W.3d 149, 168 (Tenn. 2010) ("When issues have been raised regarding the compliance of affidavits with the standards prescribed by Tenn. R. Civ. P. 56 or the admissibility of evidence contained in these affidavits, the threshold issue of admissibility should be resolved before determining whether or not unresolved questions of fact exist.") (emphasis added). Upon our careful review of the record, we determine that Professor Heminway's analysis of EPB's 2009 filing with the Tennessee Secretary of State is too limited in scope to be persuasive.

In explaining the scope of her review, Professor Heminway stated:

> I have undertaken to review and evaluate the charter of the Electric Power Board of Chattanooga ("EPB"), as filed with the Secretary of State of the State of Tennessee ("Tennessee Secretary of State") on October 28, 2009 (the "Charter"), and the conclusions set forth in the Declaration of Kevin Rayburn, filed with this court in this case on August 12, 2015 (the "Rayburn Declaration"). This Declaration provides, based on these

25

materials and my review of the Tennessee Nonprofit Corporation Act, my opinions and conclusions on the legal organization of EPB as a public benefit corporation under the Tennessee Nonprofit Corporation Act.

She ultimately concluded:

> The scope of my inquiry into this matter has not extended beyond an assessment of whether EPB was legally organized as a public benefit corporation under the Tennessee Nonprofit Corporation Act. In my opinion it was.

The record provides no indication that Professor Heminway included in her analysis the City Charter or precedent in which our Supreme Court termed EPB "the mere agency of the city," *see Tenn. Elec. Power Co. v. City of Chattanooga,* 114 S.W.2d 441, 444 (Tenn. 1937), and this Court determined EPB to be "simply an instrumentality or arm of the city," *see Cline*, 1991 WL 25941, at *4. The record also provides no indication of whether Professor Heminway was presented with the multiple acknowledgments from the Tennessee Secretary of State, reviewed by the trial court, for municipalities and agencies listed as non-profit corporations.

In her analysis pursuant to the Tennessee Nonprofit Corporation Act, Professor Heminway relies in part on Tennessee Code Annotated § 48-68-101(c) (2012), which provides:

> (c) Chapters 51-68 of this title shall not apply to municipal corporations; provided, that this chapter shall apply to any public governmental corporation or authority created by or established under the authority of a municipal corporation or county or both for the performance of public functions, including industrial development boards created pursuant to title 7.

However, the appellate record does not indicate whether Professor Heminway considered the requirements of the Electric Plant Law of 1935 providing that any transfer of EPB's assets must be voted upon in an election. *See* Tenn. Code Ann. § 7-52-132. We conclude that the trial court, presented with the totality of the authorities and multitudinous exhibits contained in this record, did not err in declining to find that Professor Heminway's declaration raised a genuine issue of material fact precluding summary judgment in favor of EPB.

In contrast, EPB relies in part on Mr. Rayburn's declaration, as a representative of the Secretary of State's Office, stating that EPB's status in relationship to the City was

not changed by the 2009 filing. While not taking a position on whether EPB was incorporated, Mr. Rayburn emphasized that "nothing in the Certificate of Existence issued by the Office of the Tennessee Secretary of State would serve to change EPB's status from a board of the City of Chattanooga to that of a non-profit corporation." Speaking for the City, Attorney Hinton stated in his August 2015 declaration that "EPB exists as an independent Board of the City of Chattanooga by virtue of the Chattanooga City Charter" and that "[a]ny discussions by the City of Chattanooga with EPB about electric billings did not arise because of any 'separateness' between the City and EPB."

Plaintiff's *qui tam* action has been brought on behalf of the City. *See* Tenn. Code Ann. § 4-18-104. Based on the preceding analysis, we conclude that the trial court did not err by granting summary judgment in favor of EPB upon finding that the City cannot sue EPB because such a lawsuit would constitute an impermissible case of the City's suing itself.

## V. Plaintiff's Justiciability Argument

Plaintiff also contends that even in the face of a determination that the City and EPB are the same entity, this action should proceed due to "justiciability" concerns that would allow the City to bring an action against EPB. Plaintiff specifically argues that the City and EPB are sufficiently separate entities that claims of overbilling and breach of contract constitute the types of disputes usually settled by courts and thereby justiciable. We disagree.

In its September 2015 memorandum opinion and order, the trial court found Plaintiff's argument regarding justiciability to be "without merit" and incorporated its detailed ruling on the issue from its July 2015 memorandum opinion and order. The court stated in the July 2015 order in relevant part:

> In his argument on [the justiciability] issue, the Plaintiff mainly relies on three different decisions; one by the Tennessee Supreme Court, one by the United States Supreme Court and one by the Tennessee Court of Appeals. The Tennessee Supreme Court decision is in Norma Faye Pyles Lynch Family Purpose, LLC v. Putnam County, 301 S[.]W[.]3d 196. That case is cited for the proposition that Tennessee courts traditionally "mirror" federal court decisions on whether there is a justiciable issue. However, the Lynch case revolved around the question of whether the claim had become moot by events which occurred after the suit was filed. The Court did not address the justiciable issue question presented in this case. The United States Supreme Court case cited is U.S. v. Interstate Commerce Commission, 337 U.S. 426 (1949). That case dealt with a situation in

27

which the United States government was attempting to recover fees charged by privately held railroads. The railroads refused to refund the fees and the government went to the Interstate Commerce Commission ("ICC"), which regulated the railroads. The ICC decided in favor of the railroads. The government was then required to contest the ICC's decision. Therefore, the lawsuit was United States v. ICC. The trial court ruled that the ICC was a branch of the United States government. As such, this was a case of the government suing itself and the case was dismissed. On appeal, the United States Supreme Court reversed the trial court and said the trial court should have looked beyond the names of the parties and considered the facts of the actual controversy. The government's main complaint was against the railroads, which were not part of the government. If the United States won the case, any money recovered would come with the railroads, not from the ICC. Therefore, this was a justiciable issue. The Tennessee Supreme Court case, titled Metropolitan Government of Nashville-Davi[d]son County, TN v. The Board of Zoning Appeals of Nashville and Davidson County, TN[, 477 S.W.3d 750 (Tenn. 2015),] was similar to the U.S. v. ICC case. In the Metropolitan Government case, the real controversy was between the Metropolitan government and a private billboard company which wanted to construct billboards on a certain road. The Metropolitan government opposed construction of the sign. However, the Board of Zoning Appeals approved the construction. Therefore, the Metropolitan Government was forced to contest the zoning board's decision. Again, while the case was entitled, Metropolitan Government v. The Board of Zoning Appeals, the government's real controversy was with the plans of the private billboard company to construct billboards on the roadway. The Court of Appeals [affirmed by the Tennessee Supreme Court] ruled that that case needed to be tried. [These] cases are different from the one before this Court. In this case, if it is found that EPB is, in fact, part of the City, it would be a case of the City suing itself. There are no private or separate companies at odds with the City in this case. The Court specifically finds that, if the City and EPB are branches of the same entity, no justiciable issue exists.

We agree with the trial court's analysis of this issue, particularly as it applies to the decisions relied upon by Plaintiff and cited by the trial court. *See, e.g., Interstate Commerce Comm'n*, 337 U.S. at 430 ("[C]ourts must look behind names that symbolize the parties to determine whether a justiciable case or controversy is presented."); *Metro. Gov't of Nashville & Davidson Cnty. v. Bd. of Zoning Appeals of Nashville & Davidson Cnty.*, 477 S.W.3d 750, 762 (Tenn. 2015) ("[A]s recognized by our Court of Appeals in this matter, Tennessee Code Annotated section 13-7-208(a)(2) explicitly provides Metro

28

with the authority to seek judicial redress in the event any structure 'is proposed to be used in violation of any' of Metro's zoning ordinances."); *Norma Faye Pyles Lynch Family Purpose LLC v. Putnam Cnty.*, 301 S.W.3d 196, 203-04 (Tenn. 2009) ("This appeal implicates the mootness doctrine. A case must remain justiciable (remain a legal controversy) from the time it is filed until the moment of final appellate disposition."). On appeal, Plaintiff relies primarily on federal court decisions involving what have been determined to be justiciable issues between agencies of the federal government. *See, e.g., United States v. Nixon*, 418 U.S. 683, 693 (1974) ("The mere assertion of a claim of an 'intra-branch dispute,' without more, has never operated to defeat federal jurisdiction; justiciability does not depend on such a surface inquiry."); *Interstate Commerce Comm'n*, 337 U.S. 426 (1949); *Dean v. Herrington*, 668 F. Supp. 646, 653 (E.D. Tenn. 1987) (concluding that a controversy between TVA and the Department of Energy was justiciable and that adjudication of the controversy did not constitute inconsistency with separation of power between the executive and judicial branches); *but see Tenn. Valley Auth. v. U.S. Envtl. Prot. Agency*, 278 F.3d 1184, 1197 (11th Cir. 2002) (citing *Dean*, among other authorities, in noting that "TVA possesses unique independence as a federal agency," including its "separate corporate identity."), *withdrawn in part on other grounds by Tenn. Valley Auth. v. U.S. Envtl. Prot. Agency*, 336 F.3d 1236 (11th Cir. 2003). We note that federal intermediate appellate decisions are but persuasive authority for Tennessee courts. *See Gossett v. Tractor Supply Co., Inc.*, 320 S.W.3d 777, 785 n.3 (Tenn. Ct. App. 2010).

Plaintiff also asks this Court to consider persuasive a decision rendered by the Supreme Judicial Court of Massachusetts in which the court addressed the relationship between a municipality and its gas and electric department. *See Town of Middleborough v. Middleborough Gas and Elec. Dep't*, 664 N.E.2d 25 (Mass. 1996). As in cases noted above by the trial court in this action, the real plaintiff in *Town of Middleborough* was actually a third party, the town's property insurer, acting as the town's subrogee. *Id.* at 584. The lawsuit involved a negligence claim against the utility for a fire that caused damage to a public school building owned by the town. *Id.* at 583-84. The Massachusetts high court applied a "practical test" to determine whether the town and the utility were "sufficiently distinct as financial and political entities to support a suit by the town against [the utility] for the town's loss as a result of the fire." *Id.* at 585. In holding that the two were sufficiently distinct to preclude summary judgment on the basis of the two as one entity, the Massachusetts court identified several elements of the utility's independence from the town and found particularly important that the "town's revenues come from its citizens, whereas [the utility's] revenues come from its ratepayers, in both Middleborough and the town of Lakeville." *Id.* at 588-89. We decline to apply this reasoning to the case at bar.

In determining that EPB is an instrumentality of the City, this Court previously has determined that EPB "must deposit all revenues in the name of the City of Chattanooga and may only draw on these funds through the City Treasurer and the City of Chattanooga is the owner of the Electric Power Board's system, wherever located." *See Cline*, 1991 WL 25941, at *4. We determine the cases upon which Plaintiff relies to be highly factually distinguishable from this action, particularly in light of the trial court's well-reasoned finding that if a money judgment were to be granted, any portion not going toward the *qui tam* plaintiff's recovery, *see* Tenn. Code Ann. § 4-18-104, "would merely be transferred from one account of the City to another account of the City." In contrast, our Supreme Court in *Metro. Gov't of Nashville* determined that a justiciable controversy existed between the plaintiff city and the defendant zoning board in great part because recovery was possible—the permits granted to the billboard company could be revoked. *See* 477 S.W.3d at 761 ("In holding that Metro has standing to pursue this action, we are persuaded particularly by the concern voiced by the Illinois Court of Appeals that '[a] rule that would preclude the municipality from seeking judicial review would, in effect, grant to zoning boards unbridled power not reviewable in any court except in situations where private citizens suffer injury different from that suffered by the general public.'") (quoting *Reichard v. Zoning Bd. of Appeals of City of Park Ridge,* 290 N.E.2d 349, 353 (Ill. 1972)). In this case, the City could only recover against its own power board with funds from a judgment moved from one account belonging to the City to another. The trial court did not err by finding Plaintiff's justiciability argument to be without merit.

## VI. Plaintiff's Motion to Amend Complaint

The trial court denied Plaintiff's motion to amend the original complaint upon finding that the amendment motion had been filed subsequent to EPB's filing the motion to dismiss, which the court classified as a "responsive pleading." On appeal, EPB concedes that the trial court erred by classifying the motion to dismiss as a responsive pleading and thereby erred by denying Plaintiff's motion to amend the complaint. *See McBurney v. Aldrich*, 816 S.W.2d 30, 33 (Tenn. Ct. App. 1991), *perm. app. denied* (Tenn. Sept. 3, 1991) (explaining that a motion to dismiss is not a responsive pleading and determining that a "motion to dismiss did not deprive the plaintiff of the absolute right to amend his complaint, and it was error for the Trial Court to strike the amended complaint which must be restored and dealt with upon its merits."). We agree with the parties that the trial court erred by denying Plaintiff's motion to amend the complaint. However, we also agree with EPB's contention that in this case, the error was harmless because Plaintiff's additional claims could not survive summary judgment.

Plaintiff sought to amend his complaint to add three claims: (1) breach of contractual rates, accompanied by false statements and false claims; (2) breach of binding rate schedules and determinations issued by TVA and binding on EPB and the City; and

(3) overlapping claims of breach of contract, breach of binding TVA rate determinations, and false claims. Having determined that the trial court properly granted summary judgment in favor of EPB and dismissed Plaintiff's original claim because the action constituted an impermissible situation of the City's suing itself, we further determine that Plaintiff's additional claims would also constitute the City's suing itself. Furthermore, for the reasons stated in the previous section of this Opinion, we conclude that Plaintiff's additional claims are not justiciable.

## VI. EPB's Remaining Grounds for Summary Judgment

EPB contends that in the event this Court reversed the trial court's finding that Plaintiff's action would constitute an impermissible case of the City's suing itself, the grant of summary judgment in favor of EPB should still be affirmed based on the remaining grounds raised in EPB's motion to dismiss.[8] In its two additional grounds, EPB argues that (1) the City may not maintain an action under the TFCA against a municipal board or other governmental entity and (2) claims brought under the TFCA are not among those for which sovereign immunity has been removed by the GTLA. The trial court, having determined that summary judgment was warranted based on its finding that EPB and the City are the same entity, did not address EPB's remaining arguments. Likewise, having determined that the trial court did not err by granting summary judgment on this basis, we further determine that EPB's arguments concerning its remaining grounds for dismissal of the complaint are pretermitted as moot.

## VII. Conclusion

For the reasons stated above, we affirm the trial court's judgment. This case is remanded to the trial court, pursuant to applicable law, for enforcement of the trial court's judgment and collection of costs assessed below. The costs on appeal are assessed against the *qui tam* appellant, Don Lepard, as the party who proceeded with this action and appeal.

_____
THOMAS R. FRIERSON, II, JUDGE

---

[8] We note that the trial court granted Plaintiff's motion to treat EPB's motion to dismiss as a motion for summary judgment only as to the argument regarding EPB's status as an instrumentality of the City.